UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION–FLINT

In re

William Edmond McCrary,                            Case No. 08-31241
                                                   Chapter 7
        Debtor.                                    Honorable Daniel Opperman

_____/

William Edmond McCrary and
Jeanne Overweg,

        Plaintiffs,

v.                                                 Adv. Pro. No. 08-03097

J.M. Jarrard and
The City of Flint,

        Defendants.

_____/

OPINION REGARDING DEFENDANT CITY OF FLINT'S MOTION FOR
DISMISSAL, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT
AS TO PLAINTIFFS' CLAIMS AGAINST DEFENDANT CITY OF FLINT

        The City of Flint seeks summary judgment and dismissal on the only counts pending in

this action against it--Counts VIII and XII of the Plaintiffs' Third Amended Complaint filed on

October 6, 2009.[1]  Although the Plaintiffs' Third Amended Complaint contains twelve counts,

the only counts pled against Defendant City of Flint are Counts VIII and XII.

Facts and Background

A.      Relevant Background Facts

The parties do not dispute the following relevant facts:

On May 17, 2007, the Plaintiffs, William Edmond McCrary and Jeanne Overweg

purchased from the individual Defendant, J.M. Jarrard, real property located at 1036 Dupont

_____

        [1] Filed at Docket No. 104, and labeled as a Second Amended Complaint; however, this
pleading is actually Plaintiffs' Third Amended Complaint.

Street, Flint, MI, by jointly executing two promissory notes and a first and second mortgage to Defendant. At some point thereafter, the Plaintiffs failed to make payments to Defendant Jarrard, who then initiated foreclosure proceedings against the Plaintiffs.

On September 20, 2007, Plaintiff, William Edmond McCrary filed a voluntary Chapter 13 petition, which was assigned the case number 07-33169. On or about August 8, 2007, Defendant Jarrard filed a small claims action against only Plaintiff Jeanne Overweg, in the 68th District Court, which was assigned Case No. 07-0892-SC, for non-payment of the promissory notes. On September 25, 2007, Magistrate Tanille Brooks of the 68th District Court held a hearing on case no. 07-0892-SC, and awarded a $3,000 judgment against Plaintiff Overweg and in favor Defendant Jarrard. Plaintiff Overweg appealed Magistrate Brooks' decision, which was assigned to Judge Herman Marable of the 68th District Court, who held at least one hearing on the appeal. Judge Marable ultimately did not rule on the appeal as Defendant voluntarily dismissed that lawsuit, ostensibly because Plaintiff McCrary, as obligor on the note concerning the residence, had filed a Chapter 13 bankruptcy.

While Plaintiff Overweg's appeal of Case No. 07-0892-SC was pending, Defendant Jarrard filed a second small claims action in the 68th District Court on October 2, 2007, against only Plaintiff Overweg, Case No. 07-1045-SC, for $1,885.23 in legal fees he allegedly incurred due to the default under the promissory notes. This action was ultimately dismissed after Magistrate Brooks determined that a previous judgment had been obtained by Defendant Jarrard against Plaintiff Overweg, and that any claim for attorney fees in small claims court was not allowed.

Plaintiffs assert that both Defendant Jarrard and the City of Flint had notice of the bankruptcy and proceeded to act in a manner that violated the stay–Defendant Jarrard by pursuing the indicated state court actions, as well as other alleged actions taken against Plaintiffs, and Defendant City of Flint, through the 68th District Court, by presiding over these

2

cases and entering judgments in favor of Defendant Jarrard.

On February 15, 2008, the Plaintiff McCrary's bankruptcy Case No. 07-33169 was dismissed before his Chapter 13 plan was confirmed. On March 6, 2008, Defendant Jarrard dismissed both state court civil actions against Plaintiff Overweg. On March 27, 2008, Plaintiff McCrary filed a second Chapter 13 petition, which was assigned Case No. 08-31241. Plaintiff McCrary voluntarily converted this second bankruptcy case to Chapter 7 on March 25, 2009.

B.  The Plaintiffs' Third Amended Complaint

On June 12, 2008, Plaintiffs commenced this adversary proceeding by the filing their original complaint against the individual Defendant Jarrard. On October 6, 2009, Plaintiffs filed their Third Amended Complaint. In the Third Amended Complaint, Plaintiffs added the City of Flint as a defendant. Although the Third Amended Complaint contains twelve counts, only Counts VIII and XII apply to the City of Flint.

In Count VIII, Plaintiffs seek to recover damages for an alleged violation of the automatic stay and co-debtor stay by both Defendant Jarrard, and Defendant City of Flint.

Count XII is pled only against Defendant City of Flint. Count XII is grounded on a violation of the Plaintiffs' civil rights under 42 U.S.C. § 1983, which is rooted in Defendant City of Flint's violation of the co-debtor stay through the policies, practices, and customs engaged in by its agents/ employees, including Magistrate Brooks and Judge Marable. Under Count XII, Plaintiffs seek an award of "damages consistent with the injuries suffered, costs, and attorney fees pursuant to the Civil Rights Attorneys' Fees Awards Act of 1976."

C.  Defendant City of Flint's Motion for Summary Judgment

In support of its Motion for Summary Judgment, the City of Flint makes two arguments. First, the City argues that it is not liable for the actions of Magistrate Brooks and Judge Marable taken in their capacity of judicial officers for the 68th District Court because: (a) Neither Magistrate Brooks or Judge Marable are employees or agents for the City of Flint; and (b) the

3

City of Flint is not responsible for and has no administrative authority over the policies, practices, or customs of the 68th District Court. In support of this argument, the City relies on: (1) The 1963 Constitution of the State of Michigan, Article 6, § 26; (2) Mich. Comp. Laws §§ 600.8101 600.8104(1)(b); (3) *Judicial Attorneys Assoc. v. State of Michigan*, 459 Mich. 291, 586 N.W.2d 894 (1998); (4) *Pucci v. Michigan Supreme Court*, 601 F. Supp.2d 886 (E.D. Mich. 2009); and (5) the Chief Judge Rule, MCR 8.110.

Second and alternatively, the City of Flint argues that if the Court concludes that Magistrate Brooks and Judge Marable are its employees, the Plaintiffs' claims against it still must fail because they are barred by absolute judicial immunity. In support of this argument, the City relies on *Ireland v. Tunis*, 113 F.3d 1435 (6th Cir. 1997), and Mich. Comp. Laws § 691.1407.

The City also requests an award of attorney fees and costs that it unnecessarily incurred as a result of the Plaintiffs' lack of due diligence and investigation in suing the proper government unit responsible for the actions of Magistrate Brooks and Judge Marable.

On May 27, 2010, the City of Flint filed the Affidavit of Judge Archie L. Hayman, the Chief Judge of the 68th District Court as a supplemental exhibit to its Summary Judgment Motion.

D.      Plaintiffs' Response

In their response to the City of Flint's Summary Judgment Motion, Plaintiffs focus primarily on their Section 1983 claim as alleged in Count XII of the Third Amended Complaint. In their response, the Plaintiffs assert:

> The City of Flint was added to the Adversary Proceedings in October 2009 for violations of 42 U.S.C. § 1983. Specifically, the City of Flint was joined to the adversary proceeding because it continued the actions against Jeanie [sic] Overweg despite notice that it was divested of jurisdiction by the filing of a bankruptcy case and the treatment of the real property underlying the collection action. Despite this notice, the defendant City allowed the continuance of state court collection proceedings against the co-debtor, Jeanie Overweg [sic], in

4

violation of the co-debtor stay. 11 U.S.C. § 1301.

The Plaintiffs contend that genuine issues of material fact exist:

"as to whether a relationship existed between the City of Flint and the 68th District
Court that could give rise to liability under 42 U.S.C. § 1983 for an egregious
official policy and/or custom that deprived Plaintiffs of their rights. The City of
Flint, acting under color of state law, authorized, tolerated, ratified, permitted, or
acquiesced in the creation of policies, practices, and customs, establishing a de
facto policy of deliberate indifference to the rights of individuals such as
Plaintiffs."

Specifically, Plaintiffs contend that: (1) the Magistrate Brooks' and Judge Marable's

status as employees of the City of Flint is not relevant to their Section 1983 action due to

Plaintiffs' allegations of "repeated refusal" to recognize the bankruptcy stay and the jurisdiction

of the bankruptcy court; (2) any claim of judicial immunity for the actions of Magistrate Brooks

and Judge Marable is also not relevant to their Section 1983 action because Plaintiffs assert that

any actions taken by these judicial officers were the result of an official policy and/or custom of

the City of Flint, rather than taken on an individual basis; and (3) judicial immunity is not

relevant because the 68th District Court lacked subject matter jurisdiction over the small claims

actions during the pendency of the bankruptcy case of Plaintiff McCrary.

In their response to the City of Flint's Motion for Summary Judgment, Plaintiffs admit

that they failed to supply any documentation to Magistrate Brooks or Judge Marable (or any

other personnel of the 68th District Court) to substantiate Plaintiff McCrary's then bankruptcy

Case No. 07-33169, which was pending during the subject state court proceedings. The

Plaintiffs contend that neither Magistrate Brooks, Judge Marable, or any other 68th District Court

personnel requested such documentation from the Plaintiffs, or advised the Plaintiffs what kind

of proof was required to be provided by them to the 68th District Court.

In support of their position that the City of Flint is the proper Defendant, the Plaintiffs rely

on (1) admission made by the City of Flint about the employment status of Magistrate Brooks; (2)

certain admissions made by the 68ᵗʰ District Court Administrator, Paula McGlown, during her deposition including that Magistrate Brooks is a City of Flint employee; (3) the organizational chart for the City of Flint, which appears on its website, that indicates that the position of the 68ᵗʰ District Court is on the same level as the Mayor of the City of Flint; (4) the City of Flint Department directory, which "lists the 68ᵗʰ District Court as a department of the City of Flint"; and (5) the practices and conduct of Magistrate Brooks and Judge Marable in failing to honor, recognize, or address the applicability of the automatic stay and the effect the Debtors' pending Chapter 13 bankruptcy case had on Defendant Jarrard's small claims actions.

There also does not appear to be a dispute that:

(1) The City of Flint is a municipal corporation, and that the 68ᵗʰ District Court was established by the 1963 Constitution of the State of Michigan, Article 6, § 26, as implemented by Mich. Comp. Laws 600.8101.

(2) In Michigan, all district courts are required to appoint a presiding judge who has full authority and control, subject to the supervision of the supreme court, over all matters of administration of the district court under Mich. Comp. Laws § 600.8221.

(3) On an annual basis, the 68ᵗʰ District Court must submit a budget to the District Funding Unit for operating expenses of the district court.

Statement of Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), as well as E.D. Mich. LR 83.50. This is a core proceeding as it involves, or is otherwise related to, alleged violations of the automatic stay. 28 U.S.C. § 157(b)(2)(G).

Applicable Law

A.     Summary Judgment Standard

Federal Rule of Civil Procedure 56 is made applicable in its entirety to bankruptcy

6

adversary proceedings by Fed. R. Bankr. P. 7056. Federal Rule of Bankruptcy Procedure

7056(c) provides that summary judgment is proper "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law." *See Choate v. Landis Tool Co.*, 46 F. Supp. 774 (E.D. Mich. 1980). The moving party

bears the burden of showing the absence of a genuine issue of material fact as to an essential

element of the non-moving party's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472 (6th Cir.

1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The burden then shifts to the nonmoving party once the moving party has met its burden, and the

nonmoving party must then establish that a genuine issue of material fact does indeed exist.

*Janda v. Riley-Meggs Industries, Inc.*, 764 F. Supp 1223, 1227 (E.D. Mich. 1991).

As summarized by *St. Paul Fire & Marine Ins. Co. V. CEI Florida, Inc.*, 864 F. Supp.

656 (E.D. Mich. 1994), the Sixth Circuit has promulgated a "series of principles to be applied in

motions for summary judgment:

> Cases involving state of mind issues are not necessarily
> inappropriate for summary judgment.
>
> The movant must meet the initial burden of showing "the absence
> of a genuine issue of material fact" as to an essential element as to
> a non-movant's case.
>
> This burden may be met by pointing out to the court that the
> respondent, having had sufficient opportunity for discovery, has no
> evidence to support an essential element of his or her case.
>
> The respondent cannot rely on the hope that the trier of fact will
> disbelieve the movant's denial of a disputed fact, but must "present
> affirmative evidence in order to defeat a properly supported motion
> for summary judgment."
>
> The trial court no longer has the duty to search the entire record to
> establish that it is bereft of a genuine issue of material fact.
>
> The trial court has more discretion than in the "old era" in
> evaluating the respondent's evidence. The respondent must "do

more than simply show that there is some metaphysical doubt as to the material facts." Further, "[w]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is "implausible."

*Id*. at 664-65 (citing *J.C. Bradford & Co.*, 886 F.2d at 1479-80 (footnotes with citations omitted)).

      B.      <u>Violation of the Automatic Stay</u>

Section 362(k) affords a debtor with the ability to recover damages upon a showing by the debtor of an injury that occurred as a result of a willful violation of the automatic stay. It states: "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." The debtor bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991)(noting that such a standard applies in civil matters between private litigants).

The courts have consistently held that a creditor has an affirmative duty to halt collection activities, including pre-petition garnishments, once the creditor receives notice of the debtor's bankruptcy filing. *In re McCall-Pruitt*, 281 B.R. 910, 911 (Bankr. E.D. Mich. 2002); *In re Timbs*, 178 B.R. 989, 996 (Bankr. E.D. Tenn. 1994)(quoting *Elder v. City of Thomasville, Georgia*, 12 B.R. 491 (Bankr. M.D. Ga. 1981)). "For purposes of § 362[k], bankruptcy law only requires that a party receive actual notice which is defined as the type of notice that would cause a reasonably prudent person to make a further inquiry; formal notice is not required." *In re Perviz*, 302 B.R. 357, 367-68 (Bankr. N.D. Ohio 2003) (other citations omitted).

Once a party receives notice of a bankruptcy filing, the party commits a willful violation by taking any action prohibited by Section 362(a). *In re Banks*, 253 B.R. 25, 29 (Bankr. E.D. Mich. 2000). The word "willful" is not defined in Section 362. Through various court rulings,

willful has been interpreted to "mean any intentional and deliberate act undertaken with

knowledge of the pending bankruptcy case regardless of how such knowledge is obtained. *In re*

*Perviz*, 302 B.R. 357, 365 (Bankr. N.D. Ohio 2003)(citations omitted). It is unnecessary for a

court to determine that a party specifically intended to violate the stay. *Id*. In addition, whether

a creditor is acting in good faith based on a belief that it possessed certain rights or a dispute as

to its rights, is also not relevant to a willful violation determination. *Banks*, 253 B.R. at 29.

Whether the automatic stay applies to non-debtors, such as Plaintiff Overwig, is another

issue. The filing of a Chapter 13 petition gives rise to an automatic stay that applies "to all

entities" (subject to certain enumerated exceptions that are not applicable in this proceeding).

11 U.S.C. § 362(a). See also *In re Javens*, 107 F.3d 359, 363 (6th Cir. 1997) (explaining that

although there are limited exceptions, "[t]he § 362(a) shield can repel actions by "all entities,"

including governments.") Under 11 U.S.C. § 1301:

> (a) Except as provided in subsections (b) and (c) of this section, after the order for
> relief under this chapter, a creditor may not act, or commence, or continue any
> civil action, to collect all or any part of a consumer debt of the debtor from any
> individual that is liable on such debt with the debtor, or that secured such debt,
> unless —
>
>> (1) such individual became liable on or secured such debt in the
>> ordinary course of such individual's business; or
>>
>> (2) the case is closed, dismissed, or converted to a case under
>> Chapter 7 or 11 of this title.
>
> (b) A creditor may present a negotiable instrument, and may give notice of the
> dishonor of such an instrument.

The term "consumer debt" is defined as a "debt incurred by an individual primarily for a

personal, family, or household purpose." 11 U.S.C. § 101(8).

In *Harris v. Fort Oglethorpe State Bank*, 721 F.2d 1052 (6th Cir. 1983), the Sixth Circuit

Court of Appeals provided the following lengthy discussion on the co-debtor stay –

> The provisions of § 1301 were not designed to penalize a creditor who has a
> contractual right to rely upon the comaker's assets. Rather, the purpose of the

9

automatic stay is to enable the consumer-debtor to propose a repayment plan without undue pressure to give preference to a debt involving a co-signer. Congress believed that if a creditor could automatically reach the assets of a co-signer, who is generally a close friend or a relative of the debtor, then the co-signer would induce the debtor to give preference to that debt. Such a preference could easily frustrate the ability of the debtor to submit an acceptable plan. The legislative history leading to the enactment of § 1301 provides that:

> The automatic stay does not prevent the creditor from receiving
> full payment, including any costs and interest, of his claim. It does
> not affect his substantive rights. It merely requires him to wait
> along with all other creditors for that portion of the debt that the
> debtor will repay under the plan.
> . . . .

The general purpose of the stay, therefore, is to protect the debtor from undue pressure when, in good faith, he is carrying out his obligations under his Chapter 13 plan. The rights of the creditor are not completely ignored. In order to assure that the creditor receives the benefit of its bargained-for guarantee, relief from the automatic stay is available under limited circumstances; when the debtor's plan proposes not to pay the creditor in full; or when failure to lift the stay would cause the creditor irreparable harm.

*Id*. at 1053 (internal citations omitted).

D. Civil Action for Deprivation of Rights

In Count XII, the Plaintiffs seek relief under 42 U.S.C. § 1983, which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and law, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statue of the District of Columbia.

"The basic requirements of a § 1983 claim include a showing that (1) a person, (2) acting

under color of state law, (3) deprived the plaintiff of a federal right. *Berger v. City of Mayfield*

*Heights*, 265 F.3d 399, 405 (6th Cir. 2001) (other citations omitted).

In addition, in the case of *Adkins v. Board of Educ. Of Magoffin County, KY*, 982 F.2d

10

952, 957 (6th Cir. 1993), the Sixth Circuit Court of Appeals explained the test to be followed to determine whether local governing bodies are liable for a policy statement, ordinance, regulation, or decision officially adopted by that body's officers. The *Adkins* Court held that while a formally adopted policy is not required and established usage or custom may be sufficient, it is ultimately reference to state law that will direct the court to an "official or body that has the responsibility for making law or setting policy in any given area of a local government's business." *Id*. (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S. Ct. 915, 924, 99 L.Ed.2d 107 (1988)).

      E.      Judicial Immunity

Absolute judicial immunity is a concept discussed by the Sixth Circuit Court of Appeals in the case of *DePiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999):

> Judges are generally absolutely immune from civil suits for money damages, including § 1983 suits. This far-reaching protection "is justified 'by a long-settled understanding that the independent and impartial exercise of judgment vital to the judiciary might be impaired by exposure to potential damages liability.'" Accordingly, absolute judicial immunity is overcome only in two situations. First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.

*Id*. at 783-84 (citations omitted). As to the two listed exceptions: (1) It is the "nature" and "function" of the act at issue that a court must examine, not the "act itself, *id*. at 784; and (2) the scope of jurisdiction is to be construed broadly, and only actions taken in the "'clear absence of all jurisdiction'" will an exception to judicial immunity apply. *Id*.


Analysis

The Court begins its analysis by noting that the Court does not need to decide whether the co-debtor stay imposed by 11 U.S.C. § 1301 was in place during the relevant time as to Plaintiff Overweg. While there may have very well been a co-debtor stay in place to protect

11

Plaintiff Overweg under the above-cited case law, the timing of such and ultimate determination regarding such becomes irrelevant for purposes of the instant Motion before the Court as to the City of Flint. Thus, Court will assume the automatic stay did exist as to both Plaintiffs at certain relevant times during the 68th District Court proceedings; however, the Court must first analyze whether the City of Flint has first, any connection to actions taken and, if so, whether these actions are protected by judicial immunity in any event.

The Court concludes that Plaintiffs have failed to show that a genuine issue of material fact exists on both points. The City of Flint's reliance on the above-cited Michigan Constitution, Michigan statutes, Michigan court rule, and case law is accurate and sound. While the City is connected with the funding of the 68th District Court, the City has no direct control over the actions taken by the judges of the court in furtherance of their official duties. As held in *DePiero*, the independence of the judiciary can only be preserved by adhering to this well-recognized concept. Plaintiffs did not provide this Court with facts to refute that a clear deviation from this constitutionally and statutorily mandated protocol occurred, nor, based upon the materials and Affidavit of Judge Hayman provided by the City of Flint, is it plausible such occurred here. The record before the Court contains numerous undisputed facts to tip the scale in the City's favor to determine that a trier of fact could not find for the Plaintiffs. Although Plaintiffs assert that a material facts exists about the "relationship that exists between the City of Flint and the 68th District Court that could give rise to liability under 42 U.S.C. § 1983 for an egregious official policy and/or custom that deprived Plaintiffs of their rights," the Court concludes that this such is not sufficient to create a genuine issue of material fact, or to contradict the City of Flint's position and reliance on Michigan law, applicable case law, and the affidavit of Judge Hayman. The Michigan Constitution, statutes, court rule, and case law indicate that the City of Flint's relationship to the 68th District Court is limited to the local government unit that provides operational financing and nothing else. While Plaintiffs could

have named other defendants in this action, i.e., the Michigan Supreme Court, the 68th District Court, or Magistrate Brooks and Judge Marable, in their individual capacities, the Court concludes from the above-cited case law and facts as alleged by Plaintiffs, that judicial immunity would insulate the individual judges' from liability, which in turn insulates the District Court and Michigan Supreme Court as well. The acts at issue were clearly taken in the official capacity of Magistrate Brooks and Judge Marable.  While a stay may have been in place, both judicial officers acted within their stated jurisdiction for purposes of the automatic stay analysis as well as any Section 1983 claim.  Accordingly, the City of Flint has no liability.

<u>Conclusion</u>

For the foregoing reasons, the Court grants the City of Flint's Motion for Summary Judgment.  The Court directs counsel for the City of Flint to prepare and submit an appropriate Order consistent with this Opinion.

**Signed on March 31, 2011**

            **/s/ Daniel S. Opperman**
        **Daniel S. Opperman**
        **United States Bankruptcy Judge**

13